Leonard PORTER *v.* STATE of Arkansas

CR 03-1307 191 S.W.3d 531

Supreme Court of Arkansas
Opinion delivered September 16, 2004

*Dorcy K. Corbin*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David J. Davies*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Leonard Porter was convicted of two counts of aggravated robbery and one count of capital murder. He was sentenced to two life sentences running consecutively for the aggravated-robbery charges and life without parole for the capital-murder charge. On appeal, Mr. Porter argues that the trial court erred by denying his motions for directed verdict and by refusing to administer his alternative jury instruction on the lesser-included offense of first-degree murder. As Mr. Porter was sentenced to life imprisonment without parole, this court's jurisdiction is proper pursuant to Ark. R. Sup. Ct. 1-2(a)(2). We find no merit in Mr. Porter's argument and affirm the trial court.

On July 12, 2002, around 2:00 a.m., Appellant Leonard Porter rode his bicycle to Wal-Mart, which was closed. Greg Martin was delivering milk for Hiland Dairy to Wal-Mart when Mr. Porter approached him and asked him for a cigarette. Mr. Martin refused and proceeded to the back of the Wal-Mart building to continue his delivery. Mr. Porter followed him and pulled out a gun, demanding that Mr. Martin help him get into the store. As a result of this demand, Mr. Martin rang the door bell of

Wal-Mart. When Debra Gregory, the store manager, opened the back door, Mr. Porter forced his way into Wal-Mart and stated, "I would like to — I need Wal-Mart's money, you know, I need money. I am here to get money." He then escorted Mr. Martin, Ms. Gregory, and Gary Smith, the night maintenance man, at gunpoint through the store, collecting money from cash registers and merchandise from the store. When Mr. Porter was unhappy with the amount of money in the registers, he told them, "I need to see 20's and 50's and 100's or I am going to — I will have to shoot you." He forced his three victims to carry his bags of stolen merchandise and repeatedly threatened to shoot them if they did not cooperate. Mr. Porter also wanted to take jewelry and shotguns, but he was unwilling to break the glass to get them after Ms. Gregory told him she did not have the keys to the cases. Shortly after passing the case of shotguns, Mr. Porter shot Gary Smith in the back of the head. He then stepped over Mr. Smith's bleeding body and told the remaining hostages, "Look, your friend is hurting now. Now you know I'm not playing." Mr. Porter proceeded to laugh as Mr. Smith lay bleeding to death on the ground and said, "that mother fucker, he hurting now." Next, Mr. Porter ordered Mr. Martin to pick up the bags of cigarettes and cigars that Mr. Smith had been carrying. Mr. Martin testified he got blood all over himself while trying to retrieve the cigarettes. Mr. Porter then asked to see Ms. Gregory's and Mr. Martin's driver's licenses to get their names and addresses. He told them he would find and kill them if the police showed up. Eventually, upon Ms. Gregory's suggestion, Mr. Porter decided to lock both Ms. Gregory and Mr. Martin in a video room. Before leaving, he told them to go to church and thank God that they were alive. Shortly thereafter, Ms. Gregory used her cell phone to call 911, and the police came. Mr. Porter was arrested later that night, riding his bicycle a few blocks from his house and carrying a bloodied Wal-Mart bag.

At trial, Mr. Porter was charged with capital murder and aggravated robbery. At the conclusion of the State's case, Mr. Porter made a motion for a directed verdict, arguing the State had not proven the death was caused with extreme indifference to the value of human life or with premeditation and deliberation. The trial court denied the motion. Upon Mr. Porter's renewal of the motion at the end of the trial, the motion was again denied.

The State requested the model jury instructions on the lesser-included offense of first-degree murder. *See* AMI-Crim. 2d 301, 302. Arkansas Model Criminal Jury Instruction 2d 302 allows the jury to consider the lesser-included offense only if the jury has a reasonable doubt of the defendant's guilt on the charge of capital murder. Mr. Porter requested an alternative jury instruction that would permit the jury to consider both the capital-murder charge and the lesser-included offense of first-degree murder simultaneously. The trial court denied Mr. Porter's request for an alternative jury instruction; instead, the court used AMI-Crim. 2d 301, 302 to instruct the jury.

After some deliberation, the jury sent a note to the trial judge asking for clarification of the phrase "manifesting extreme indifference to the value of human life." The trial judge, after conferring with both lawyers, refused the request. The jury returned guilty verdicts on the capital-murder charge as well as the aggravated-robbery charges. Mr. Porter was sentenced to life without parole on the capital-murder charge and two life sentences running consecutively on the aggravated-robbery charges.

On appeal, Mr. Porter raises two points of error. First, he argues that the trial court erred in denying his motions for directed verdict on the capital-murder charge and the two aggravated-robbery charges. Second, he contends that the trial court erred in refusing his alternative jury instruction.

 Porter's first argument is that the trial court erred in denying his motions for directed verdict because there was insufficient evidence to sustain either the capital-murder charge or the two aggravated-robbery charges. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence. *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*

Under Ark. Code Ann. § 5-10-101 (Repl. 1997), a person commits capital murder if he commits a robbery and, in the course of and in furtherance of the robbery or in immediate flight therefrom, he causes the death of any person under circumstances manifesting extreme indifference to the value of human life or with the premeditated and deliberate purpose of causing the death of another person, he causes the death of any person. Ark. Code Ann. §§ 5-10-101(a)(1), -101(a)(4). Mr. Porter claims the evi-

dence was insufficient to support either a finding of a death under circumstances manifesting extreme indifference or a finding of a premeditated and deliberate killing.

In his first argument pertaining to the capital-murder conviction, Mr. Porter challenges the sufficiency of the evidence of circumstances manifesting extreme indifference to the value of human life. Yet, Mr. Porter offers no argument as to *why* the evidence was insufficient. His only support for the contention that the evidence was insufficient centers around a note that the jury wrote to the trial judge, stating,

> Judge, can you give us an example of what "under circumstances manifesting extreme indifference to the value of human life" means in simple/lay terms? Or break it down some other way, please.

Mr. Porter contends this note shows that the jury did not understand the meaning of the phrase "under circumstances manifesting extreme indifference to the value of human life." However, the jury's subjective understanding plays no role in a review for the sufficiency of the evidence. The only question is whether the verdict is supported by substantial evidence. *Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001). As stated above, substantial evidence is evidence forceful enough to compel a conclusion beyond suspicion or conjecture. *Id.*

The evidence presented at trial was sufficient to establish that Mr. Porter caused the death of Gary Smith under circumstances manifesting extreme indifference to the value of human life. Extreme indifference is established by actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002). Mr. Porter admitted pointing a loaded gun at Gary Smith in the course of a robbery. Such conduct by itself constitutes a manifestation of extreme indifference to the value of human life. *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002). In addition, Mr. Porter fired a gun at an unarmed victim from less than three feet away, further indicating conditions manifesting extreme indifference to the value of human life. *Williams v. State, supra*; *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000).

To the extent Mr. Porter challenges the jury's understanding of the term "circumstances manifesting extreme indifference to the value of human life," this argument is not

preserved for appeal. At no point in the proceedings below did Mr. Porter challenge the jury instruction as confusing or misleading on the issue of the meaning of the phrase "manifesting extreme indifference to the value of human life." Even after it became clear to him that the jury was struggling with one of the elements of the crime, Mr. Porter still did not argue that the instruction was faulty or confusing. Consequently, on appeal, Mr. Porter has modified his original grounds for directed verdict. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). With regard to the element of extreme indifference, his motion for directed verdict at trial was based solely on the ground that the State failed to prove that he caused a death with extreme indifference to the value of human life. As Mr. Porter cannot change his grounds on appeal and is limited to the scope and nature of the objections presented at trial, he cannot make this new argument on appeal. *Id.*

Mr. Porter also challenges the capital-murder conviction by asserting that the evidence was insufficient to find premeditation and deliberation. He argues that because he denied the murder "was a purposefully and deliberate act," he cannot be guilty of premeditated and deliberate capital murder. This argument is without merit. We have long held that premeditation and deliberation are not required to exist for a particular length of time and can be formed in an instant. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999). Premeditation is rarely capable of proof by direct evidence and may be inferred from the type and character of the weapon used, the manner in which the weapon was used, the nature, extent and location of the wounds, and the accused's conduct. *Sanders v. State*, 340 Ark. 163, 8 S.W.3d 520 (2000). Here, Mr. Porter repeatedly threatened to shoot all three victims throughout the ordeal. He used a gun to shoot Mr. Smith at close range and admitted that the shooting was intentional. Furthermore, Mr. Porter not only cursed Mr. Smith as he was dying, but he also proceeded to threaten the remaining victims and locked them in a room so he could get away. We conclude these actions by Mr. Porter are sufficient to show premeditation and deliberation.

For his only argument against the aggravated-robbery convictions, Mr. Porter claims there was no evidence that he took anything from Ms. Gregory or Mr. Martin. He mistakenly suggests a conviction for aggravated robbery requires some sort of

taking of property. However, Ark. Code. Ann. § 5-12-102(a) (Repl. 1997) provides that "[a] person commits robbery if, *with the purpose* of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, *he employs or threatens to employ physical force upon another*" (emphasis added). "Aggravated robbery" additionally requires the perpetrator to either (1) be armed or represent that he or she is armed with a deadly weapon or (2) to inflict or attempt to inflict death or serious bodily injury upon another person. Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997). The statutory language, as well as the case law, focuses on the threat of harm to the victim and not on the actual transfer of property. *Williams v. State, supra.* In this case, Mr. Porter's own statements provide enough evidence to sustain his conviction for aggravated robbery, as he admitted to having the purpose to commit felony theft, employing and threatening to employ force on his victims, and using a gun during the robbery.

██ Next, Mr. Porter challenges as error the decision of the trial court to give AMI-Crim. 2d 302 to the jury, instead of the defense's proposed alternative jury instruction. The instruction requested by the State and ultimately given to the jury reads as follows:

> Mr. Porter was charged with capital murder. This charge includes the lesser offenses of murder in the first degree and murder in the second degree. You may find the Defendant guilty of one of these offenses, or you may acquit him outright . . . .

> If you have a reasonable doubt of the Defendant's guilt on the charge of capital murder, you will then consider the· charge of murder in the first degree.

The defense objected to this instruction, and proposed the following instruction:

> Leonard Porter is charged with capital murder. This charge includes the lesser offense of first degree murder.

> You may find Leonard Porter guilty of one of these offenses, or you may acquit him outright.

> In most cases, you would be required to acquit the Defendant of the greater charge before considering any lesser included offenses.

> However, in this case, there is some overlap between the definition of capital murder and the definition of first degree murder. Therefore, you may consider both capital murder and first degree murder at the same time during your deliberations.

> If you have a reasonable doubt as to the Defendant's guilt of both offenses, you may consider murder in the second degree.

In support of the proffered instruction, Mr. Porter argues that the statutory definition of the capital-murder offense and the first-degree murder offense overlap; and, because this "overlap" can be confusing to the jury, the jury should be allowed to consider the offenses of capital and first-degree murder together. However, all lesser-included offenses established by proof of the same or less than all the elements required to establish the commission of the offense charged will necessarily "overlap" with their greater offenses. This "overlap" is inherent in one of the three statutory definitions of a lesser-included offense. *See* Ark. Code Ann. § 5-1-110(b)(1) (Repl. 1997). An offense is included in another offense if it is not possible to commit the greater offense without committing the lesser one. *Owens v. State,* 354 Ark. 644, 138 S.W.3d 445 (2003). As lesser-included offenses under Section 5-1-110(b)(1) "overlap" their greater offenses, the defendant is essentially urging that the jury should always be allowed to consider such lesser-included offenses at the same time it considers the greater offense.

According to Mr. Porter, our previous case law suggests this new "overlap" rule. We disagree. He erroneously interprets *Rainey v. State,* 310 Ark. 419, 837 S.W.2d 453 (1992), as "acknowledg[ing] that the jury may find all the elements of the greater offense were proven; however the jury could determine that the crime committed was actually the lesser included offense." However, in *Rainey,* the question at issue was the complete failure of the trial court to give an instruction on manslaughter, and this court specifically avoided the question of whether manslaughter constituted a lesser-included offense. Thus, Mr. Porter's reliance on the *Rainey* case to show *anything* concerning the relationship of the greater offense to a lesser-included offense is misplaced.

In a related argument, Mr. Porter suggests that although the "overlap" rule might not apply to all greater and lesser-included offenses, the offenses of capital murder and first-degree murder are uniquely situated so as to require the "overlap"

rule. Specifically, he maintains that, "while the general rule concerning the reasons for making a finding of guilt on the greater charge before moving to the lesser charge makes sense when there are clear lines to distinguish the charges, the basis for that rule is not present when dealing with capital murder and first degree murder." This argument harkens back to the argument that the statutes defining the offenses of capital murder and first-degree murder are unconstitutionally vague, an argument which has been rejected time and again by this court. *See, e.g. Williams v. State,* 346 Ark. 54, 56 S.W.3d 360 (2001); *White v. State,* 298 Ark. 55, 764 S.W.2d 613 (1989); *Cromwell v. State,* 269 Ark. 104, 598 S.W.2d 733 (1980). In those cases, we found no constitutional infirmity in the overlapping of the two statutes because there is no impermissible uncertainty in the definitions of the offenses. *Id.* In so holding, the court explained that it is impossible to avoid the use of general language in the definition of certain offenses. *Id.* Mr. Porter acknowledges the above-noted precedent, but, nonetheless, insists that because the statutory definitions of the offenses of capital murder and first-degree murder overlap, the jury should be able to consider them simultaneously. However, there is a presumption that the model instruction is a correct statement of the law, and Mr. Porter has cited no authority for his position sufficient to overcome this presumption. *McCoy v. State,* 348 Ark. 239, 74 S.W.3d 599 (2002).

To the extent Mr. Porter argues that the jury instruction was improper because it required the jury to reach a unanimous acquittal on the greater charge before considering the lesser-included offense, or because it mandated the order for jury deliberations, these arguments are not preserved for appellate review. In his original challenge to the instruction, Mr. Porter never mentioned either of these arguments, and arguments not raised at trial will not be addressed for the first time on appeal. *Hinkston v. State, supra.*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *Doss v. State,* 351 Ark. 667, 97 S.E.3d 413 (2003).

Affirmed.

CORBIN, J., not participating.