Tishaun Demetri STENHOUSE  *v.*
STATE of Arkansas

CR 04-1207                                    209 S.W.3d 352

Supreme Court of Arkansas
Opinion delivered June 2, 2005

*Leverett & Watts, PLLC,* by: *Mark D. Leverett,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Karen Virginia Wallace,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Tishaun Demetri Stenhouse appeals from his conviction for capital murder and his sentence to life imprisonment without parole plus fifteen

years' imprisonment for committing a felony with a firearm. He asserts three points on appeal. We find no error and affirm the judgments of conviction.

On July 7, 2003, at sometime after midnight, members of the Little Rock Police Department found Braylon Gray shot to death in the front yard of a residence at 3115 Fulton Street in Little Rock. Testimony at trial reveals that prior to his death, Gray and several others, including Stenhouse, had gathered at the Fulton Street home. Several of the people, including Gray, had gathered there to smoke sherm.[1] At some point during the evening, gunshots were fired inside the house, and everyone exited the house into the front yard. Testimony at trial revealed that two different people fired gunshots inside the house. There was testimony that a man named Angelo first pulled a gun on Gray, held it to his neck, and then shot it into the ceiling. After that, there was testimony that Stenhouse fired one shot inside the house while everyone was leaving. Several of those present testified that Gray was the last to leave the house. Testimony then diverges as to what happened next and as to how Gray was acting before he was shot. The end result was that Stenhouse shot and killed Gray in the front yard of the house with several witnesses present. He was charged with capital murder and with committing a felony with a firearm.

At the conclusion of the trial, Stenhouse was convicted of both charges and sentenced accordingly.

*I. Sufficiency of the Evidence*

We first consider Stenhouse's sufficiency-of-the-evidence point due to double-jeopardy considerations. *See Edwards v. State*, 360 Ark. 413, 201 S.W.3d 902 (2005). Stenhouse argues that because of the evidence presented, neither the judge's denial of his directed-verdict motion, nor the jury's verdict, can be upheld. He points to the testimony presented at trial on his behalf and asserts that the circuit court should have granted his motion for directed verdict, because the State's evidence reflects a paucity of any evidence that Stenhouse acted with a premeditated and deliberated

---

[1] Kim Light, a professor of pharmacology at the University of Arkansas for Medical Sciences in the College of Pharmacy and a witness for the defense, testified that sherm is "a street term for tobacco, marijuana, or sometimes a parsley or oregano cigarette that has been dipped in either [a] liquid form of phencyclidine [PCP] or otherwise adulterated with phencyclidine with a powder form of the drug."

purpose in causing Gray's death. He contends that every witness who was at the scene testified that Gray was the aggressor and that the testimony refutes the State's theory that Gray was shot in the back while lying on the ground. He further maintains that the evidence presented overwhelmingly supports his defense that the shooting was justified. He contends that the State did not disprove that he reasonably believed that Gray was about to hit him or use deadly physical force against him.

This court has repeatedly stated its standard of review for sufficiency-of-the-evidence claims:

> The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004); *Reed v. State*, 353 Ark. 22, 109 S.W.3d 665 (2003). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Parker*, 355 Ark. 639, 144 S.W.3d 270.

*Davis v. State*, 362 Ark. 34, 39, 207 S.W.3d 474, 479 (2005).

Our capital-murder statute reads in pertinent part:

> (a) A person commits capital murder if:
>
> . . .
>
> (4) With the premeditated and deliberated purpose of causing the death of another person, he or she causes the death of any person[.]

Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2003). This court has long held that premeditation and deliberation are not required to exist for a particular length of time and can be formed in an instant. *See, e.g., Porter v. State*, 358 Ark. 403, 191 S.W.3d 531 (2004). We have further held that premeditation is rarely capable of proof by direct evidence and may be inferred from the type and character of the weapon used;

the manner in which the weapon was used; the nature, extent and location of the wounds; and the accused's conduct. *See id.*

■ In the case at hand, Tiffany Williams testified that Gray walked out of the house and toward the street, and that Stenhouse walked towards Gray. She testified that Gray had no gun; nor had she heard him make any threats. She added that after the shooting, Stenhouse got in his car and drove away. Brandon Landers testified that he saw Stenhouse shoot seven or eight times and that before Stenhouse shot Gray, Stenhouse told him that if he said another word, he would kill him. Landers also testified that Gray did not have a gun and was not violent that night. Finally, Dr. Charles Paul Kokes, an associate medical examiner for the State, testified that the cause of Gray's death was multiple gunshot wounds. He also testified that one of Gray's wounds gave indications that he was shot while lying down. We conclude that these facts sufficiently demonstrate premeditation and deliberation.

With respect to Stenhouse's claim of self defense, several witnesses, as already noted, testified that Gray was not conducting himself in a weird or strange fashion, but like the others smoking sherm, he was slow-moving. They testified that he was not violent or unpredictable and was not aggressive. There was also testimony by Brandon Landers that Gray walked toward Stenhouse and said, "Man, why you do that?" and that Stenhouse warned him not to say any more or he would kill him. We have held that a jury is not obliged to believe an appellant's claim that he shot someone in self defense. *See, e.g., Jenkins v. State*, 350 Ark. 219, 85 S.W.3d 878 (2002). Because there was ample evidence to support the jury's finding of premeditated and deliberated capital murder, we hold that the circuit court did not err in denying Stenhouse's directed-verdict motion.

## II. *Batson Challenges*

Stenhouse next claims that the circuit court erred in denying his three *Batson* challenges made pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), regarding jurors Ms. Jackson, Mr. York, and Ms. Smith. He contends that he met his burden of proof with respect to his challenges and that the State's supposed race-neutral reasons for the exclusion of these jurors did not "hold water." He asserts that because the circuit court ended its inquiry with the State's race-neutral explanations, the court erred as a matter of law

by not proceeding to the third step of the *Batson* inquiry. He adds that the State's systematic exclusion of African-Americans from the jury rendered his trial constitutionally infirm.

In *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004), this court repeated its three-step procedure for making challenges under *Batson v. Kentucky, supra*:

> . . . In *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998), this court set forth the three-step procedure for challenges under *Batson v. Kentucky*, 476 U.S. 79 (1986). We summarized the *MacKintrush* procedure in *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000):
>
> > . . . First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must present a *prima facie* case of racial discrimination. Second, once the strike's opponent has made a *prima facie* case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's opponent has proven purposeful discrimination. Here, the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent.
>
> 340 Ark. at 538-39, 10 S.W.3d at 911-12 (internal citations omitted). This court will reverse a circuit court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. *See id.* We further accord some measure of deference to the circuit court, because it is in a superior position to make determinations of juror credibility. *See id.*

357 Ark. at 205, 163 S.W.3d at 347.

*a. Jurors Jackson and York*

After the peremptory challenges made by the State regarding jurors Jackson and York, Stenhouse made a *Batson* objection. At that time, counsel for Stenhouse argued that of the twelve jurors in that particular group, one-fourth were African-American and two of the three were struck by the State. Counsel further argued that of the remaining nine white jurors, only one of those was struck.

Counsel then stated that in his opinion, none of the answers given by the two African-American jurors gave rise to a strike for any reason other than race, and he pointed out that his defendant was African-American.

The prosecutor responded that the victim too was African-American and asserted that Stenhouse had failed to make a *prima facie* case for racial discrimination. She further stated that there was one African-American in the box whom the State had left seated and that the State had chosen to strike a proposed alternate, presumably white, as opposed to an African-American who was seated as a potential alternate.

The circuit court ruled that it did not believe that the defense counsel had made a *prima facie* case for a *Batson* challenge and denied it. However, for purposes of the record, the circuit court requested that the prosecutor give her reasons for the strikes. As to Ms. Jackson, the prosecutor asserted that Ms. Jackson "basically visited with a defense witness the night before trial." The prosecutor further referred to the fact that in a previous *voir dire*, Ms. Jackson said that she would require physical evidence linking the defendant to a crime in order to find him guilty. With respect to Mr. York, the prosecutor argued that he had listed his educational background as "[through] the eighth grade," while the other jurors had indicated at least a high-school education. The circuit court excused Ms. Jackson and Mr. York.

Stenhouse now claims that the circuit court erred as a matter of law by not engaging in the third step of the *Batson* analysis, regarding the need for a sensitive inquiry. This court examined a similar scenario in *Anderson v. State, supra,* and made no mention of error. In that case, Anderson raised a *Batson* challenge after the State struck an African-American juror. This court noted that although the circuit court did not believe that Anderson made a *prima facie* case, the circuit court nonetheless directed the State to offer its race-neutral reason for the strike. This court then examined the State's reason and found the circuit court did not abuse its discretion in denying Anderson's *Batson* challenge. No additional evidence or argument was presented by defense counsel in support of the *Batson* challenge in *Anderson v. State, supra.* The circuit court denied the *Batson* objection based on the evidence presented.

■ The same holds true in the case before us. As this court said in *Anderson v. State, supra,* the State's race-neutral explanation must be more than a mere denial of racial discrimination, but need

not be persuasive or even plausible, and, indeed, may even be silly or superstitious. *See also Purkett v. Elem*, 514 U.S. 765 (1995) (*per curiam*). Here, the State's explanations for jurors Jackson and York were given and appear to meet this court's definition of race-neutral reasons. Moreover, after the race-neutral reasons were given by the prosecutor, no additional evidence or argument was presented by defense counsel in support of his claim of purposeful discrimination. The circuit court upheld the two strikes, and we hold there was no abuse of discretion.

### b. Juror Smith

Following the State's strike of Ms. Smith, defense counsel mounted another *Batson* challenge. After reciting the strikes of jurors Jackson and York, counsel asserted that while he did attend church with Ms. Smith, the church has a membership in excess of 6,500. In addition, counsel stated that while Ms. Smith knew her pastor who was to be a defense witness, that witness was not slated to testify until the sentencing phase. Counsel pointed to the fact that Ms. Smith stated that she would not feel the need to explain herself either to defense counsel or Bishop Arnold and argued that two other white jurors who knew State witnesses were not struck by the State. Stenhouse's counsel claimed that all of this showed a pattern of striking African-Americans from the jury.

The prosecutor responded that the defense had not made a *prima facie* case. She argued that of twelve jurors, she had struck six—three Caucasian and three African-Americans, and that as to the alternate panel, she had struck a Caucasian female. The prosecutor responded that Ms. Smith knew that defense counsel attended her church and that such was a relationship with which the State was uncomfortable. The prosecutor further explained that when coupled with the fact that a defense witness was a pastor of that church and was the pastor of defense counsel and Ms. Smith, this added to the State's uncomfortable feeling.

Following defense counsel's response that the sole reason for disqualification was the fact that Ms. Smith was African-American, the circuit court upheld the strike. Prior to doing so, defense counsel offered no additional proof to support an assertion of purposeful discrimination. Accordingly, we hold there was no abuse of discretion by the circuit court in denying the *Batson* challenge.

### III. Continuance

Stenhouse argues that his motion for continuance filed before the circuit court and his argument at the hearing on the motion set out all the information required for granting a continuance and clearly shows that his defense was prejudiced by his inability to have a key witness available to testify. He contends that the missing witness would have testified to the victim's behavior, including his disassociation from reality, his aggressiveness, and his unpredictable behavior. He asserts that this testimony would have been germane to his defense and an answer to the anticipated testimony from the State's witness regarding Gray's conduct while under the influence of sherm and PCP.

This court reviews the grant or denial of a motion for continuance under an abuse-of-discretion standard. *See, e.g., Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance but also must show prejudice that amounts to a denial of justice. *See Cherry v. State*, 347 Ark. 606, 66 S.W.3d 605 (2002).

Our criminal rules provide that a court shall grant a continuance "only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case." Ark. R. Crim. P. 27.3 (2004). In addition, our Practice, Procedure, and Courts Code sets forth additional requirements when the continuance is requested due to the absence of evidence or a witness:

> (a) A motion to postpone a trial on account of the absence of evidence shall, if required by the opposite party, be made only upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to obtain it. If the motion is for an absent witness, the affidavit must show what facts the affiant believes the witness will prove and not merely show the effect of the facts in evidence, that the affiant himself believes them to be true and that the witness is not absent by the consent, connivance, or procurement of the party asking the postponement.

Ark. Code Ann. § 16-63-402(a) (1987).

This court in its case law has also identified several factors for the circuit court's consideration in deciding a continuance motion: (1) the diligence of the movant; (2) the probable effect of the

testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove but also that the appellant believes them to be true. *See, e.g., Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997).

In the instant case, Stenhouse filed his motion for continuance a few days before his jury trial was set to begin. The motion stated that one of the witnesses needed for trial, Angela Alexander, would testify about the conduct of Gray shortly after being shot, which would correspond with the defense expert's testimony regarding people who have taken PCP. The circuit court took up the motion the day before trial. At that time, defense counsel informed the circuit court that Ms. Alexander could not be found and that numerous attempts to subpoena her had been made. Defense counsel explained that Ms. Alexander would testify that as she was attempting to do CPR on the victim after he was shot, he got up and said that he had not been shot and was fine. Counsel stated that Ms. Alexander would testify that Gray was attempting to leave before she convinced him to sit down and that he then passed out. Defense counsel further explained that such conduct would confirm Gray's disassociation from reality, which he also displayed during the time the shooting was occurring and immediately prior to it. The prosecutor responded to the motion by stating that the State had also been looking for Ms. Alexander for three months and that Ms. Alexander's testimony was not relevant. The prosecutor added that what Gray did after he was shot and down on the ground had nothing to do with Stenhouse's claim of self defense.

The circuit court then asked whether Ms. Alexander's statement, which was given to police officers, could be used by the defense expert in forming his expert opinion. Defense counsel agreed that it could. The circuit court denied the motion and set the trial to begin the next day.

██ This court has held that a circuit court does not abuse its discretion in denying a request for continuance when the motion is not in substantial compliance with Ark. Code Ann. § 16-63-402(a) (1987). *See Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995). The State argues on appeal that Stenhouse failed to file the required affidavit regarding materiality of the missing witness and diligence. However, a review of the instant record fails to reveal any prior objection by the prosecutor before the circuit court that Stenhouse failed to file the requisite affidavit.

Hence, we will not address that point. *See, e.g., Echols v. State,* 326 Ark. 917, 936 S.W.2d 509 (1996).

■ That being said, the circuit court, nonetheless, properly denied Stenhouse's motion for a continuance for a different reason. Not only did Stenhouse not file the affidavit as required by the statute, he has failed to demonstrate how he was prejudiced by the denial of his motion. We conclude as we do because similar testimony to that anticipated from Angela Alexander was introduced at trial through Tiffany Williams, a prosecution witness:

> PROSECUTOR: Did you ever see Braylon crawl or walk to this spot over here?
>
> Ms. WILLIAMS: He was — he was laying on the ground. He tried to get up. I was like, "No." I was like, "Braylon, lay down." I was like, "Be still.," like that right there. I was like, "Be still." He was like — I was like, "Braylon, be still. You're shot." And I was like — I'm like, "Help. Somebody help."
>
> And he was like — I'm like, "Be still." He was like, "Ain't nothing wrong with me." I'm like, "Braylon, be still. Please be still," you know what I'm saying. I'm crying. I'm like, "Please be still."
>
> And he was like, "Ain't nothing wrong with me." I'm like, "Oh, please be still." And I'm like — he just laid there, and I'm like, "Oh, somebody please help. Somebody please help." And it was — ooh.

Because testimony was presented at trial that Gray tried to get up after being shot and acted as if nothing was wrong, which is similar testimony to that anticipated from Angela Alexander, we cannot say that Stenhouse has demonstrated prejudice amounting to a denial of justice. Simply because the testimony was offered by a State's witness, rather than his own witness, does not equate to prejudice. Accordingly, we hold that the circuit court did not abuse its discretion by denying Stenhouse's motion for continuance.

■ The record in this case has been reviewed for error pursuant to Supreme Court Rule 4-3(h). While not raised by either party, our review reveals that the circuit court sentenced Stenhouse to life imprisonment plus fifteen years. However, his

judgment and commitment order reflects a sentence of life imprisonment *without parole*, plus fifteen years. It is the entered judgment and commitment order that controls. *See Johninson v. State*, 330 Ark. 381, 953 S.W.2d 883 (1997). *See also* Administrative Order No. 2 (2005).

Affirmed.