# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3533

_____

Tishaun Demetri Stenhouse,        *
        *
        Appellant,        *
        *   Appeal from the United States
      v.        *   District Court for the
        *   Eastern District of Arkansas.
Ray Hobbs,[1] Interim Director,    *
Arkansas Department of Correction,  *
        *
        Appellee.        *

_____

Submitted:  September 22, 2010
Filed:  February 7, 2011

_____

Before RILEY, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

An Arkansas jury convicted Tishaun Demetri Stenhouse of capital murder and committing a felony with a firearm.  Stenhouse received a sentence of life imprisonment without parole, plus fifteen years' imprisonment.  After the Supreme Court of Arkansas affirmed his convictions, Stenhouse filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  In his petition, Stenhouse, who is a black male, alleged that the prosecution exercised peremptory challenges based on race

_____

[1]Interim Director Hobbs is substituted for his predecessor pursuant to Federal Rule of Appellate Procedure 43(c)(2).

during jury selection, in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court[2] denied Stenhouse's petition, and we affirm.

## I.

Stenhouse was prosecuted for a murder committed in Little Rock, Arkansas. On the evening of July 7, 2003, Stenhouse and several others gathered at a residence in Little Rock. Gunshots, including one shot attributed to Stenhouse by a witness, were fired inside the house. The occupants then moved to the front yard, where Stenhouse shot and killed a man. Stenhouse was charged with capital murder and committing a felony with a firearm. *See Stenhouse v. State*, 209 S.W.3d 352, 354 (Ark. 2005).

During jury selection, the prosecution exercised peremptory strikes against three black members of the venire: Ms. Jackson, Mr. York, and Ms. Smith. Citing *Batson v. Kentucky*, 476 U.S. 79 (1986), defense counsel objected to the strikes, alleging that they were motivated by the race of the prospective jurors and thus prohibited by the Equal Protection Clause. At the trial court's request, the prosecution proffered race-neutral reasons for the strikes. The trial court overruled Stenhouse's three objections.

After a trial, the jury found Stenhouse guilty of both charges. The court sentenced Stenhouse to life imprisonment without parole on the capital murder charge, and fifteen years' imprisonment on the firearms charge.

On appeal, the Supreme Court of Arkansas rejected Stenhouse's *Batson* claims and affirmed the convictions. *Stenhouse*, 209 S.W.3d at 354. The supreme court

[2]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

concluded that the prosecution's reasons for striking Jackson and York "appear to meet this court's definition of race-neutral reasons," and held that the trial court, in overruling Stenhouse's objections, did not abuse its discretion. *Id.* at 357. The supreme court likewise held that the trial court did not abuse its discretion in denying Stenhouse's *Batson* objection to the prosecution's strike of Smith. *Id.* at 358.

In 2006, Stenhouse filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. His petition alleged that the prosecution made race-motivated peremptory strikes and that the state courts misapplied clearly established federal law in rejecting his *Batson* challenges. The district court denied relief, but granted Stenhouse a certificate of appealability.

II.

*Batson* established that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89. In evaluating *Batson* objections, trial courts are guided by a three-step process:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (citations omitted).

We review petitions for writ of habeas corpus under the framework set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, because Stenhouse's claim "was adjudicated on the merits in State court proceedings," he is entitled to relief only if he shows that the adjudication "resulted

-3-

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

Stenhouse's claim that the state courts misapplied the *Batson* framework presents a legal question that is subject to the standard set forth in § 2254(d)(1). *See Taylor v. Roper*, 577 F.3d 848, 863 & n.4 (8th Cir. 2009); *Smulls v. Roper*, 535 F.3d 853, 862-63 (8th Cir. 2008) (en banc). Stenhouse's contention that the state courts unreasonably determined that the prosecution's peremptory strikes were not motivated by race is subject to the standard for factual determinations set forth in § 2254(d)(2). *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Taylor*, 577 F.3d at 854-55; *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001). AEDPA further mandates that a state court's factual determinations "shall be presumed to be correct," and that the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Taylor*, 577 F.3d at 854-55; *cf. Wood v. Allen*, 130 S. Ct. 841, 848 & n.1 (2010).

III.

A.

We first consider Stenhouse's claims concerning the peremptory strike of prospective juror Smith. Stenhouse argues that the decision of the state courts to deny his *Batson* claim was based on an unreasonable determination of the facts, and that it was contrary to, or involved an unreasonable application of, *Batson* and related decisions of the Supreme Court.

When the prosecution struck Smith from the venire, the prosecutor denied that Stenhouse made even a prima facie case of an equal protection violation, but volunteered to articulate a race-neutral reason for striking Smith. At that point, the prosecution had struck six prospective jurors, three of whom were white and three of whom were black. When the court asked for the race-neutral reason, the prosecutor explained as follows:

> Ms. Smith did state that she, basically, knew that defense counsel attended her church, and defense counsel has stated that that church is a large congregation . . . and yet she recognizes him.
>
> . . . That, in and of itself, is a relationship that the State is uncomfortable with a witness in the case having.
>
> . . . [C]oupled with the fact that a defense witness is a pastor of that church and is the pastor of defense counsel and of Ms. Smith, the State is – that further – that adds to our uncomfortable feeling about having her sit as a juror in this particular case.

The trial court denied Stenhouse's objection to the strike, stating only that "the *Batson* motions have been made at the appropriate times in the appropriate manner, and I have denied the motions, and then I have asked for race-neutral reasons for purposes of the appellate record so that that would be perfected for all parties." The Supreme Court of Arkansas, noting that "defense counsel offered no additional proof to support an assertion of purposeful discrimination," held that the trial court did not abuse its discretion in overruling the objection. *Stenhouse*, 209 S.W.3d at 358. Stenhouse now asserts that the state court erred in determining that the prosecution had race-neutral reasons for striking Smith.

The record does not establish that the decision of the Supreme Court of Arkansas was based on an unreasonable determination of the facts presented in the state court proceedings. During *voir dire*, Smith stated that one of the potential

defense witnesses, Bishop Arnold, served as her pastor, and that she attended the same church as defense counsel. These statements substantiate the race-neutral reasons proffered by the prosecution. The reasons also support a reasonable determination that the prosecution did not engage in purposeful discrimination. Although Smith said that she could put aside her relationships with Arnold and defense counsel, and that she would not feel a need to explain her verdict to them, the peremptory strikes need not meet the standard of a strike for cause. It was quite reasonable for the prosecution to prefer a juror who did not have regular contact with a defense attorney at church and who did not have a defense witness for a pastor.

Stenhouse contends that the prosecution's impermissible motive is demonstrated by comparing Smith to four white prospective jurors – Mr. Simpson, Mr. Papan, Mr. Clements, and Ms. Whitlock – whom the prosecution did not strike. Each of these prospective jurors was acquainted with potential witnesses, but the relationships were different than Smith's. Simpson and Papan attended the same church as a prosecution witness, and Clements knew a different witness for the prosecution. In an adversarial process, it is little wonder that the prosecution showed less concern about seating a juror who may have been acquainted with a witness favorable to the State's case than with a juror who associated with defense counsel and a prominent defense witness. Although prospective juror Whitlock knew of Bishop Arnold, her familiarity was based on their time in school together many years before, and she had no present relationship with Arnold. There was thus good reason for the prosecution to distinguish between Whitlock and Smith when striking jurors who may have been predisposed to favor the side of the case supported by Bishop Arnold. For these reasons, Stenhouse has failed to establish that the state court's decision was based on an unreasonable determination of the facts.

Stenhouse also claims that the decision of the state courts was contrary to, or involved an unreasonable application of, *Batson* and related decisions of the Supreme Court. He asserts that the state trial court misapplied *Batson* when ruling on the strike

of Smith by not explicitly stating its rationale on the record. This court said in 2008, however, that "federal law has never required explicit fact-findings following a *Batson* challenge, especially where a prima facie case is acknowledged and the prosecution presents specific nondiscriminatory reasons on the record." *Smulls*, 535 F.3d at 860. The Supreme Court's decision in *Snyder v. Louisiana*, 552 U.S. 472 (2008), relied in part on the absence of specific findings in the trial record, *see id.* at 485, but the Court did not go so far as to mandate an explicit statement of reasons on every objection, and in any event, *Snyder* post-dated the state supreme court's decision by nearly three years. The Supreme Court of Arkansas implicitly determined that there was no purposeful discrimination in the strike of Smith, and the state courts did not unreasonably apply *Batson* by rejecting the challenge in the manner that they did.

Stenhouse also maintains that the state courts did not engage in a meaningful analysis of *Batson*'s third step when evaluating the strike of Smith. In other words, he argues that the state courts failed to consider whether the prosecution's reasons were credible and whether purposeful discrimination existed. Stenhouse suggests that because they fail to examine the ultimate question of discriminatory intent, Arkansas courts may accept "silly" and "superstitious" race-neutral reasons for peremptory strikes.

The lack of an explicit third-step analysis by the state courts is not contrary to, or an unreasonable application of, any decision of the Supreme Court. Stenhouse points to *Purkett v. Elem*, 514 U.S. 765 (1995) (per curiam), where the Supreme Court held that, at step two of the *Batson* process, courts should not reject a prosecution's proffered reasons as unpersuasive. *Id.* at 768. This practice, the Court explained, improperly combines steps two and three, and "violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*

Assuming for the sake of analysis that *Purkett* would clearly establish the unreasonableness of a state-court decision that combined steps two and three in *favor* of the prosecution, the Supreme Court of Arkansas did not conflate the questions of race-neutrality and purposeful discrimination. The state court accurately stated *Batson*'s three-step framework, recounted defense counsel's arguments in favor of his objection, found that the prosecution's proffered reasons for the strike were race neutral, noted that defense counsel did not offer additional evidence, and concluded that the trial court did not abuse its discretion in overruling the objection. *See Stenhouse*, 209 S.W.3d at 356-58. This decision is best read as holding that the defendant's evidence was insufficient to meet his burden of persuasion to show that the race-neutral reasons were a pretext for impermissible discrimination: "[T]he denial of a *Batson* challenge is itself a finding at the third step that the defendant failed to carry his burden of establishing that the strike was motivated by purposeful discrimination." *Smulls*, 535 F.3d at 863; *see also Taylor*, 577 F.3d at 865 n.7. The decision of the state supreme court was therefore not contrary to, or an unreasonable application of, clearly established federal law.

B.

We next consider Stenhouse's claims concerning the peremptory strikes of prospective jurors Jackson and York. The State contends that we should not address these claims, because the certificate of appealability issued by the district court is limited to Stenhouse's argument concerning prospective juror Smith. The district court's order on the motion states only that "[a]fter careful review of the record . . . Petitioner's motion . . . should be, and is hereby, granted." The motion described the strikes of all three jurors, and argued that "it is at least debatable whether the Eighth Circuit would hold that *at least one juror* was stricken for racial reasons." R. Doc. 29, at 4 (emphasis added). Although the argument in support of the motion focused on the strike of Smith, the references to all three jurors – together with the district court's

unqualified grant of the motion – indicate that the certificate was not limited to the peremptory challenge of Smith alone. We therefore turn to the merits.

When Stenhouse objected to the strikes of Jackson and York, the trial court concluded that he failed to establish a prima facie case of racial motivation. At that point, the prosecution had stricken two of three black prospective jurors and one of nine white prospective jurors. The trial court also asked, however, that the prosecution state for the record its race-neutral reasons for the strikes. The court noted that Jackson had an encounter with a defense witness during the previous night, and the prosecution echoed this fact: "Ms. Jackson did indicate that she basically visited with a defense witness the night before trial." The prosecution added that during a previous *voir dire* in another case, Jackson "suggested that she would require physical evidence linking the defendant to a crime, such as fingerprints." With respect to York, the prosecution explained that he "listed his educational background as only completing the eighth grade." The trial court then solicited further argument from the defense, and counsel replied: "I think it's clear, Your Honor. They have not stated a reason that I believe is sufficient." Having already overruled the objections based on lack of a prima facie case, the trial court made no further comment on the prosecution's proffered reasons.

On direct appeal, the Supreme Court of Arkansas proceeded beyond the question of a prima facie case and considered the prosecution's proffered reasons for the strikes. *Stenhouse*, 209 S.W.3d at 357. The court concluded that the reasons met the "court's definition of race-neutral reasons" and noted that "no additional evidence or argument was presented by defense counsel in support of his claim of purposeful discrimination." *Id.* The court then upheld the ruling of the trial court to deny the *Batson* objections.

When the rationale of a state trial court and state appellate court differ, some circuits have said that the analysis under § 2254(d) should focus on the rationale of

the last state court to have reviewed the claim. *See, e.g.*, *Joseph v. Coyle*, 469 F.3d 441, 450 (6th Cir. 2006); *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002). We have said that "[e]ven if the trial court made a legal error, the error does not support habeas relief if the state appellate court correctly applied federal law." *Smulls*, 535 F.3d at 862. Our court has not directly addressed whether, if the reasoning of the state appellate court cannot pass muster under AEDPA, the rationale of the state trial court also merits deference under § 2254(d). We need not do so here, because we conclude that the reasoning of the Supreme Court of Arkansas did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or a decision that was based on an unreasonable determination of the facts.

The state supreme court reasonably applied *Batson* by assuming for the sake of analysis that Stenhouse made a prima facie case, and then resolving the claim at steps two and three of the *Batson* analysis. The court expressly found that the prosecution gave race-neutral reasons for its peremptory strikes of Jackson and York. By ruling that the trial court did not abuse its discretion in overruling Stenhouse's objections, the state supreme court implicitly found that the strikes were not motivated by purposeful discrimination. *See Taylor*, 577 F.3d at 856; *Smulls*, 535 F.3d at 863. For the reasons discussed with respect to prospective juror Smith, we reject Stenhouse's claim that the state court impermissibly eliminated the third step of the *Batson* analysis.

The state court's findings are adequately supported by the trial record. The prosecution correctly noted that Jackson had been in the company of a defense witness during the previous evening. Although Jackson told the trial court that her minimal experience with the witness would not affect the performance of her duties, her encounter with a defense witness on the eve of trial nonetheless furnished a substantial basis for the state court to conclude that the prosecution had a nondiscriminatory motive. The prosecution's reference to Jackson's statement in a previous *voir dire* that she would insist on physical evidence provided an additional ground for the court

to conclude that the strike was not motivated by race. As with prospective juror Smith, Stenhouse has failed to make a persuasive showing that white prospective jurors not stricken by the prosecution were similarly situated to Jackson.

The trial record also supports the state court's finding of no purposeful discrimination in the strike of York. The prosecution's explanation that it struck York because of his education level provided a sufficient basis for the court's conclusion. *See Taylor*, 577 F.3d at 859-60. Stenhouse correctly points out that the prosecution was mistaken as to York's education, but there is no evidence that the prosecution knew of this mistake when it made the strike. The record reflects that when the prosecution was notified of York's true educational background, the prosecution immediately offered to have York reseated, and the state court reasonably determined that the mistake was made in good faith. The record thus does not establish that the state court's decision was based on an unreasonable determination of the prosecution's purpose. Stenhouse is not entitled to relief based on the peremptory strikes of Jackson and York.

\* \* \*

The judgment of the district court is affirmed.

_____