# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2839

_____

| | | |
|---|---|---|
| Mark E. Broom, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Larry Denney, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 17, 2011
Filed: October 14, 2011

_____

Before MURPHY and SMITH, Circuit Judges,  and SCHREIER,[1] District Judge.

_____

SCHREIER, District Judge.

A Missouri jury convicted Mark E. Broom of first-degree murder, first-degree assault, and two counts of armed criminal action. After the Missouri Court of Appeals affirmed Broom's convictions on direct appeal and his application for state post-conviction relief was denied, Broom filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Broom, a black man, alleged that the

_____

[1] The Honorable Karen E. Schreier, Chief United States District Judge for the District of South Dakota, sitting by designation.

prosecution exercised peremptory challenges based on race during jury selection, in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court[2] denied Broom's petition, and we affirm.

Broom was prosecuted for a murder committed in Kansas City, Missouri. On November 28, 1988, Broom and several others were at a Kansas City apartment when Broom confronted one of the victims. Broom and the victim walked to the door of the apartment and Broom told the victim he did not want to see him again at the apartment complex. When the victim said he would be around because his aunt owned the building, Broom pulled out a gun and shot him, wounding him in the stomach. Broom then shot and killed another man.

During jury selection, the prosecution exercised peremptory strikes against three black and three white members of the venire. Defense counsel, citing Batson v. Kentucky, 476 U.S. 79 (1986), objected to the strike against one black member of the venire, Patricia Wright, alleging the strike was motivated by her race and thus prohibited by the Equal Protection Clause. In response to the trial court's inquiry, the prosecutor stated he struck Wright because her son had been incarcerated. Defense counsel then observed that Mary Johnston and Linda Francis, two white members of the venire who were not struck, also had sons who had spent time in jail or prison. The prosecutor asserted that he did not strike Mary Johnston because her sons had been in the county jail for short sentences for vandalism and because she stated that jail had been a positive influence in their lives. The prosecutor did not strike Linda Francis because he liked the way she argued with defense counsel about the law. The trial court denied the Batson challenge and held that the prosecutor's reasons were race neutral.

_____

[2] The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

-2-

After a trial, the jury found Broom guilty of the charges. On September 3, 1998, the court sentenced Broom to a term of life imprisonment without parole on the first-degree murder charge and thirty years' imprisonment on each of the other charges.

On April 4, 2000, the Missouri Court of Appeals affirmed the trial judge's denial of the Batson challenge and concluded that the prosecutor's basis for the strike was race neutral and that the prosecutor's explanations were not pretextual because Francis and Johnston were not similarly situated to Wright. The court observed that Francis's and Johnston's sons spent a shorter amount of time in jail than Wright's son and that Johnston had indicated jail was good for her sons. Broom's motion for post-conviction relief was denied by both the trial court and the Missouri Court of Appeals.

In Broom's federal petition for habeas corpus, he argues that the prosecutor's peremptory strikes were racially motivated and the Missouri state court misapplied clearly established federal law in resolving his Batson claim. Specifically, Broom argues that the prosecutor's proffered reason for striking Wright, that she had a son who had been in prison, was not race neutral because a disproportionate number of blacks are incarcerated in relation to their percentage of the general population. Broom also argues that the state court's determination that the prosecutor's reason for the strike was not a pretext for purposeful discrimination was an unreasonable determination of the facts in light of the evidence. The district court denied relief, but it granted a certificate of appealability on Broom's Batson claim.

This court reviews petitions for writ of habeas corpus under the standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, because Broom's claim was adjudicated on the merits in state court, he may obtain relief only if he shows that the adjudication was "contrary to or involved an unreasonable application of clearly established federal law, as determined by the

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 472 (2007).

Under Batson, a reviewing court applies a three-step process to determine whether the prosecutor's use of a peremptory strike to exclude a black member of the venire violates the Equal Protection Clause. First, a defendant must present a *prima facie* case that the prosecutor exercised a peremptory challenge on the basis of race.[3] Miller-El v. Cockrell (*Miller-El I)*, 537 U.S. 322, 328-39 (2003). The burden then shifts to the prosecutor to present a race-neutral reason for striking the venire member in question. Id. The court must then evaluate, in light of the purportedly race-neutral rationale for the strike, whether the defense has demonstrated that the prosecutor's reason for the strike was a pretext for purposeful discrimination. Id. Within this framework, the defendant may rely on "all of the circumstances that bear upon the issue of racial animosity" to show purposeful discrimination. Snyder v. Louisiana, 552 U.S. 472, 478 (2008).

Broom claims that the Missouri court unreasonably determined at step two of the Batson process that the prosecutor's justification for the strike, that Wright had a son who had been incarcerated, was race neutral. This court has held that "the incarceration of a family member is a legitimate race-neutral reason justifying the use of a peremptory strike." United States v. Wiggins, 104 F.3d 174, 176 (8th Cir. 1997) (internal citations omitted). Because the incarceration of a family member is a racially neutral reason for a strike, the Missouri state court's determination that the prosecutor

_____

[3] The first part of the Batson test, the *prima facie* case, was conceded in prior proceedings. Thus, we consider only the second and third parts of the test.

stated a race-neutral reason for striking Wright was not an unreasonable determination.

Next, Broom claims that under step three of the <u>Batson</u> process, the prosecutor's reason for striking Wright—that her son had been incarcerated—was a pretext for purposeful discrimination and that the Missouri state court's contrary holding was unreasonable in light of the evidence. Broom contends that the prosecutor failed to strike as jurors Johnston and Francis, two white women who also had sons who had spent time in jail or prison. "Striking a black panelist for reasons that apply as well to similar nonblacks who serve 'is evidence tending to prove purposeful discrimination.' " <u>Williams v. Norris</u>, 576 F.3d 850, 864 (8th Cir. 2009) (quoting <u>Miller-El v. Dretke</u> (<u>*Miller-El II*</u>), 545 U.S. 231, 241 (2005)).

The Missouri state court found that Francis was not similarly situated to Wright because Francis's son spent a short time in jail, while Wright's son was incarcerated for six months. The Missouri state court also found that Francis was vocal during voir dire, and the prosecutor liked that characteristic. Broom argues that the record does not support these findings.

Under § 2254, the Missouri state court's findings are presumed correct, and the petitioner has " 'the burden of rebutting the presumption of correctness by clear and convincing evidence.' " <u>Stenhouse v. Hobbs</u>, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)). The record reflects that Francis's son had been held in pretrial detention and was convicted on a drug charge for which he was sentenced to probation. Wright's son, on the other hand, was incarcerated for six months. The record also supports the prosecutor's contention that he did not strike Francis because he "liked the way she hung in there" against Broom's defense counsel concerning the law. During questioning by defense counsel, Francis raised her hand to ask whether the defendant would have to testify and indicated she would like to hear from the defendant. Thus, the record contradicts Broom's claim that the Missouri state court

-5-

unreasonably determined the facts in light of the evidence in finding that the prosecutor's proffered reason for the strike was not a pretext for racial discrimination. The trial court overruled the Batson challenge and made "an implicit finding that the prosecutor's explanation was credible and that the strike was not motivated by purposeful discrimination." Taylor v. Roper, 577 F.3d 848, 856 (8th Cir. 2009). This finding is entitled to deference, and Broom has not presented clear and convincing evidence to overcome it.

With respect to Johnston, the Missouri state court found that Johnston was not similarly situated to Wright because her sons had spent a short time in the county jail five years earlier on vandalism charges, and she stated that jail had had a positive impact on their lives. Broom argues that Wright's responses regarding the incarceration of her sons were similar to Johnston's responses because Wright did not reveal any animosity towards the system, and she specifically stated her son had been treated fairly. The record reflects that Johnston's sons were in jail in Dallas for "not a very long" period of time on vandalism charges five years earlier. Johnston stated that she thought her sons' prosecutions were handled very well, were life changing, and were good for them. Wright's son, on the other hand, was incarcerated in prison for six months on drug charges. Wright stated that she did not feel he was treated unfairly or that his conviction would affect her decision in Broom's case.

"[A] federal habeas court can only grant a petition if it was unreasonable to credit the prosecutor's race-neutral explanation for a Batson challenge." Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) (citing Rice v. Collins, 546 U.S. 333, 338 (2006)). While both Wright's and Johnston's answers to the prosecutor's questions indicated that they felt their sons had been treated fairly, the Missouri state court credited the prosecutor's argument that Wright and Johnston were not similarly situated because their sons had been incarcerated for different offenses and for different periods of time.

-6-

Broom contends that the Missouri state court's decision in effect imposes an insurmountable barrier on petitioners to show that white members of the venire must have exactly the same characteristics as black members of the venire in order to be similarly situated. Broom contends this misapplies Miller-El II. "A per se rule that a defendant cannot win a Batson claim unless there is an exactly identical white juror would leave Batson inoperable; potential jurors are not the products of a set of cookie cutters." Miller-El II, 545 U.S. at 247 n.6. Broom's reliance on Miller-El II is misplaced, however, because the Supreme Court's "finding of a Batson violation did not hinge entirely on the closeness of the excluded black juror's testimony to that of the white, but on the 'totality of the relevant facts' pertaining to the prosecutor's conduct during the defendant's trial." Nicklasson v. Roper, 491 F.3d 830, 842 (8th Cir. 2007) (citing Miller-El II, 545 U.S. at 239). In Miller-El II, in addition to the similarity between the testimony of the excluded black panelist and the testimony of the white panelist, there was also evidence in the record that the State excluded 91 percent of the eligible black panelists, mischaracterized a black panelist's testimony in order to make it appear objectionable, failed to ask follow-up voir dire questions to clarify the claimed distinctions between the white and black panelists' responses, and exhibited a pattern and practice of manipulating Texas voir dire panelist dismissal rules to automatically dismiss black venirepersons. Miller-El II, 545 U.S. at 240-66. The evidence here does not rise to that level.

Moreover, Miller-El II had not been decided at the time of Broom's trial and appeal. Thus, Broom's contention that the Missouri state court unreasonably applied federal law "as decided by the Supreme Court of the United States" is without merit. See Cole v. Roper, 623 F.3d 1183, 1189 (8th Cir. 2010) ("[Petitioner] cannot argue the trial court or Missouri Supreme Court unreasonably applied either Miller-El or Snyder because neither had been decided at the time the state courts adjudicated his Batson issue.").

Broom also argues that the prosecutor's proffered reason for the strike had a disparate impact upon black venire members because more blacks are in prison than whites. As a result, Broom claims that the fact that Wright's son was in prison was a mere proxy or pretext for purposeful discrimination. Broom's evidence of pretext is his request ,while on direct appeal to the Missouri Court of Appeals, to take judicial notice of statistical evidence that "shows that 9.3% of the black population was incarcerated while 2% of the white population was incarcerated, i.e. blacks are 465% more likely to have been incarcerated than whites." Broom's request to take judicial notice was based on statistics from both the Sourcebook of Criminal Justice Statistics, 1997, and the Census Bureau.

While the statistics cited by Broom provide some evidence that the prosecutor's stated race-neutral explanation for his peremptory challenge, namely that the venire member's son was incarcerated, might be a pretext for purposeful discrimination, these statistics are insufficient to show that the Missouri state court unreasonably and incorrectly applied federal law. Unlike the statistics and the evidence of the State's pattern and practice of excluding blacks from the venire panel that was shown in Miller-El II, which directly involved the prosecutors in that case, Broom's statistics do not specifically relate to the prosecutors in this case. Further, because Broom's statistics are national statistics, it is unknown whether Broom's cited statistics accurately reflect the ratio of incarceration of blacks to whites in Jackson County, Missouri. After considering "all of the circumstances that bear upon the issue of racial animosity," this court concludes that the evidence presented to the Missouri state court is not sufficient to show purposeful discrimination. Snyder, 552 U.S. at 478.

Furthermore, for purposes of review under § 2254(d)(1), an "unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410 (2000). State courts are entitled to deference

and, accordingly, this court will grant relief only if "the state court decision is both incorrect and unreasonable." McGehee v. Norris, 588 F.3d 1185, 1193 (8th Cir. 2009). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Because Broom has not demonstrated that fair minded jurists could disagree on the correctness of the Missouri state court's resolution of his argument, he is not entitled to relief.

Accordingly, the judgment of the district court is affirmed.

_____