2011 Ark. App. 190

**Keith Laron NEWTON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–988.**

Court of Appeals of Arkansas.

March 9, 2011.

Rosalyn Antoinette Watts, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

|₁Appellant Keith Laron Newton was convicted in a jury trial of possession of cocaine with intent to deliver, possession of drug paraphernalia, and compounding. He was sentenced to concurrent prison terms of thirty, three, and five years. On appeal, Mr. Newton challenges the sufficiency of the evidence to support each of his convictions. He also argues that the trial court erred in denying his motion for continuance that he made on the day of trial. We affirm.

We consider sufficiency of the evidence before addressing other alleged trial errors. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a |₂conclusion and pass beyond suspicion and conjecture. *Id.* In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). In considering the evidence, we will not weigh the evidence or assess credibility, as those are questions for the finder of fact. *Woods v. State*, 363 Ark. 272, 213 S.W.3d 627 (2005).

Officer Thomas Miller of the Warren Police Department testified that on February 2, 2010, he received a report of some unlawful activity in a backyard at the corner of Rock and Kelly streets. In response to the report, officers were dispatched to the area.

Officer Terrance Moore was sent to the scene at the corner of Rock and Kelly, and when he arrived he observed five people in the yard and a black truck. Officer Moore indicated that the people were ordered to the ground, and that everyone except Keith Newton complied. Mr. Newton ran down the street and two officers chased him. Meanwhile, other officers conducted an inventory search of the black truck, which Mr. Newton had been driving that day, and the truck was towed.

Officer Timothy Nichols testified that he chased Mr. Newton in his patrol car, while Officer Michael Warren chased appellant on foot. Officer Nichols indicated that he caught up with Mr. Newton and Officer Warren, who were engaged in a confrontation. Officer Nichols testified that Mr. Newton was holding a white paper bag in his left hand. Officer Warren was telling Mr. Newton to get on the ground, but Mr. Newton refused. Due to Mr. Newton's refusal to cooperate, Officer Nichols sprayed him with pepper spray. At that time, Mr. Newton dropped the paper bag and the police were able to handcuff and arrest him. Officer Nichols testified that he took possession of the paper bag and it contained four baggies of a white, rock-like substance. On the ground near the paper bag was a set of digital scales. Upon searching Mr. Newton, Officer Nichols found $2034 in cash in Mr. Newton's front pants pocket. The contents of the white paper bag were transported to the police station and then sent to the crime lab, where a chemist confirmed the presence of more than fifty-two grams of a cocaine-based substance. When searching Mr. Newton's truck, the police found $3288 in cash.

Officer Warren testified about his pursuit of Mr. Newton and their confrontation. Officer Warren stated that while he was chasing Mr. Newton he saw something in his left hand. When Officer Warren caught up with Mr. Newton, he observed a white paper bag and a dark-colored square object in Mr. Newton's left hand, and Mr. Newton began swinging at the officer with his right hand. Officer Warren testified:

> As he swung at me and I told him to get on the ground, I struck him with my asp baton on the left leg, which had no effect on him. That's when he made the statement that he couldn't go down like this. He said he had five thousand dollars if I would just turn around and let him go. I gave him another command to get on the ground, then he swung at me again. I struck him with my asp baton again, which had no effect. He used the phrase five G's, which I took to mean five thousand dollars.

Officer Warren testified that when Mr. Newton started to come at him again, Mr. Newton was pepper sprayed by Officer Nichols and dropped the items he had been carrying in his left hand.

Mr. Newton testified on his own behalf, and he said that on the day at issue he was afraid because "the officer got out, waving guns and I didn't know what was going on." Mr. Newton testified that he and his wife had recently deposited their income tax refund of more than $6000 into their bank account. Mr. Newton stated that on February 2, 2010, he did not possess drugs.

■ Mr. Newton's first argument on appeal is that there was insufficient evidence to support his conviction for possession of cocaine with intent to deliver, which is

made criminal by Ark.Code Ann. § 5–64–401 (Supp.2009). Mr. Newton acknowledges that both Officers Nichols and Warren testified that they observed him drop a white bag that was later found to contain a large amount of a cocaine-based substance. However, Mr. Newton contends that both of these witnesses were biased against him. While Officer Warren testified that Mr. Newton swung at him, this was not contained in Officer Warren's report. Thus, Mr. Newton asserts that Officer Warren acted excessively in twice striking him with his baton. Moreover, Mr. Newton asserts that Officer Nichols's action of pepper spraying him was inappropriate because at that time Mr. Newton was no longer running and was not fighting with the officers. Mr. Newton argues that because of Officer Nichols's and Officer Warren's bias, the jury should have disregarded their testimony. Appellant asserts that without the testimony of these witnesses, the jury was left to speculation and conjecture in reaching its decision that he possessed cocaine with intent to deliver.

Mr. Newton's first argument is unavailing. While he questions the credibility of the arresting officers, that is a matter for the jury's consideration. *See Woods, supra.* Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State,* 373 Ark. 71, 281 S.W.3d 268 (2008). Moreover, a jury is not required to believe the defendant's version of events because he is the person most interested in the outcome of the trial. *See Springston v. State,* 61 Ark.App. 36, 962 S.W.2d 836 (1998).

In this case the jury was free to credit the testimony of Officers Nichols and Warren, and both officers testified that Mr. Newton ran from the police and attempted to avoid arrest. Evidence of flight to avoid arrest may be considered by the jury as corroborative of guilt. *Williams v. State,* 347 Ark. 728, 67 S.W.3d 548 (2002). Upon being apprehended, Mr. Newton dropped a set of digital scales and a bag containing more than fifty-two grams of cocaine. There is a rebuttable presumption of intent to deliver if the amount of cocaine is in excess of one gram. *See* Ark.Code Ann. § 5–64–401(a) (Supp. 2009). The police also found more than $2000 in cash on appellant's person and more than $3000 in the truck he was driving. Viewing the evidence in the light most favorable to the State, there was substantial evidence to support the jury's finding that Mr. Newton committed possession of cocaine with intent to deliver.

Mr. Newton next challenges the sufficiency of the evidence to support his conviction for possession of drug paraphernalia. Arkansas Code Annotated section 5–64–403(c)(1)(A)(i) (Supp.2009) makes it unlawful for any person to possess, with intent to use, drug paraphernalia for certain unlawful purposes. Mr. Newton argues that there was no testimony upon which the jury could conclude that the digital scales entered into evidence could be considered drug paraphernalia. Mr. Newton submits that there was no evidence that such scales were used to weigh drugs or used for any other drug-related purpose. Therefore, Mr. Newton contends that this conviction was based on speculation or conjecture.

Mr. Newton's second argument is not preserved for review because he did not raise this specific sufficiency argument below. *See Davis v. State,* 2009 Ark. App. 573, 2009 WL 2877625 (appellant must

raise issue with specificity and make argument to the trial court for it to be preserved on appeal); *see also* Ark. R.Crim. P. 33.1 (requiring motion for directed verdict to state "the specific grounds therefor"). In making his directed-verdict motions below, appellant argued that the State failed to show that he had custody and control of the scales. He did not contend that the State failed to prove that the scales constituted drug paraphernalia.

Nonetheless, even had the argument been preserved, there was substantial evidence that the digital scales fit the statutory definition of drug paraphernalia. Pursuant to Ark.Code Ann. § 5–64–101(14)(B)(v) (Supp.2009), "drug paraphernalia" includes "a scale or balance used, intended for use, or designed for use in weighing or measuring a controlled substance." |₇In the present case, there was testimony that Mr. Newton possessed the digital scales along with large quantities of cocaine and cash. From this evidence the jury could reasonably conclude that the digital scales were intended to be used for weighing and measuring the cocaine.

Mr. Newton's third challenge to the sufficiency of the evidence is directed toward his conviction for compounding. Arkansas Code Annotated section 5–54–107(a) (Repl.2005) provides:

(a) A person commits the offense of compounding if he or she:

(1) Solicits, accepts, or agrees to accept any pecuniary benefit as consideration for refraining from reporting to a law enforcement authority the commission or suspected commission of any offense or information relating to an offense; or

(2) Offers, confers, or agrees to confer a benefit and the receipt of the benefit is prohibited by this section.

Mr. Newton again contends that Officer Warren was a biased witness, and therefore asserts that the jury should have disregarded his testimony concerning this offense.

We conclude that there was substantial evidence to support appellant's compounding conviction because, as stated earlier, it was for the jury and not this court to determine Officer Warren's credibility. Officer Warren testified that Mr. Newton offered him $5000 to let him go without a charge, and this testimony satisfied the elements of the offense.

Mr. Newton's final argument is that the trial court committed reversible error by denying his motion for a continuance. On the day of the trial, which was on June 30, 2010, Mr. Newton filed a motion for continuance, asserting:

|₈On or about June 22, 2010, a key defense witness suffered a stroke and was hospitalized at UAMS, in Little Rock. Yesterday, this witness had a set back in recovery due to a mild heart attack. His testimony is material to this case. Therefore, the above numbered case should be continued to some time after the witness's release date.

The motion prayed that the jury trial be reset for not less than thirty days after the scheduled trial date.

At the outset of the proceedings on June 30, 2010, Mr. Newton orally argued his motion for continuance to the trial court. Mr. Newton asserted that his distant cousin, Jeremy Newton, was present when the police arrived on February 2, 2010, and that he could offer exculpatory testimony about where appellant was situated at the time the police arrived and what transpired after the police ordered everyone to the ground. Appellant asserted that he learned of Jeremy's stroke just a couple of days before trial. The State made an objection based on the fact that the witness

was not disclosed until the day of trial despite the State's prior request for disclosure of defense witnesses. Mr. Newton acknowledged that he did not have any medical report documenting the condition of the proposed witness, nor did he issue a subpoena for the proposed witness.

█ In denying Mr. Newton's motion for continuance, the trial court announced that Mr. Newton did not exercise due diligence and that there had already been substantial public expense in providing Mr. Newton his right to a jury trial set for that day. Mr. Newton now argues that he did exercise diligence, and that this was an abuse of discretion. Mr. Newton maintains that he was prejudiced by the denial of his motion for continuance because a key witness was unavailable to testify in his defense.

█ The grant or denial of a continuance is within the sound discretion of the trial court, and the decision will not be overturned absent an abuse of discretion amounting to a denial of justice. *Dirickson v. State*, 329 Ark. 572, 953 S.W.2d 55 (1997). The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in a prompt disposition of the case. Ark. R.Crim. P. 27.3. The following factors are to be considered by the trial court in deciding a continuance motion: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Turner v. State*, 326 Ark. 115, 931 S.W.2d 86 (1996).

Applying the relevant factors to the circumstances of this case, there was no abuse of discretion in denying the continuance. The proposed witness was not subpoenaed and was not disclosed to the prosecution until the day of trial. Mr. Newton did not offer any specifics about the proposed testimony, stating only that the witness was there when the police arrived and that his testimony would be exculpatory. There was no demonstration that this witness, who had allegedly suffered a recent stroke and heart attack, would likely be procured if the trial were postponed. And finally, there was no affidavit filed contemporaneously with the motion stating what facts the proposed witness would prove. The appellant later submitted an affidavit of Jeremy Newton, but this affidavit was not before the trial court when it ruled on the continuance motion. The affidavit was attached to a motion for bond pending appeal submitted two weeks after the notice of appeal was filed. And even had the affidavit been timely filed and presented to the trial court for consideration, it contained only a general assertion that Jeremy Newton believed that some other unspecified person possessed the drugs that day. On this record, we hold that there was no error in denying appellant's continuance motion and that there was no resulting denial of justice.

Affirmed.

PITTMAN and GRUBER, JJ., agree.