SLIP OPINION  Cite as 2016 Ark. App. 142

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–15–87

| | |
|---|---|
| RONALD VINCE FENNELL<br>**APPELLANT**<br><br>V.<br><br>STATE OF ARKANSAS<br>**APPELLEE** | **Opinion Delivered** March 2, 2016<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. CR–2013-95-1]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

A Benton County jury convicted appellant Ronald Fennell of harassment, a Class A misdemeanor. His sole point on appeal is that there was insufficient evidence to support the verdict.[1] We affirm.

Appellant was charged with misdemeanor harassment for his actions at a school-sponsored event that occurred December 3, 2010, on the soccer fields next to his son's elementary school. Appellant's actions were in response to his disagreement with school representatives' denial of his request to ride in a hot air balloon. A ride in the hot air balloon was awarded to students who sold ten coupon books during a fall fundraising event.

Appellant's son, JF, participated in the fundraiser at Cooper Elementary School selling School Partner books beginning in late August 2010. JF testified that he had participated the

---

[1]This case is back before this court after we ordered rebriefing in *Fennell v. State*, 2015 Ark. App. 523.

year before, when he was in second grade, and earned several prizes—a "sticky hand" and a radio earpiece. He said that he wanted to earn a portable DVD player in third grade, which required the sale of 125 books, and he spoke with appellant about it. JF, with appellant's help, sold over 200 coupon books in the 2010 fundraiser, hoping to earn the DVD player plus additional prizes. He was awarded the DVD player, but he was not awarded any other prizes.

Appellant testified that he had helped JF sell coupon books to reach his goal and that, after JF sold 125 books, he called Sissy Kilgo, the PTO president at the time, to obtain more coupon books. His calls occurred on Friday night and numerous times on Saturday of Labor Day weekend. According to Ms. Kilgo's testimony, Ms. Kilgo was able to get additional books, and her husband met appellant to provide him the extra books. When the fundraiser ended and JF informed appellant that he was entitled to only one prize, the DVD player, appellant became very upset. He testified that he contacted an attorney regarding his legal rights because he felt that his son had been mistreated and defrauded and that the attorney had written a letter and made a phone call, but he did not introduce evidence of this or explain exactly to whom the letter was addressed. He said that he had also contacted School Partners, but he did not remember the name of the person with whom he spoke. He testified that he understood School Partners had agreed to allow him to ride with JF in the hot air balloon in December in lieu of the additional prizes.

Laura Carlson, who helped with the fundraiser, testified that she had first encountered appellant in late September when he came to trade money for more coupon books one

SLIP OPINION

morning before school at a table set up for that purpose. Ms. Carlson said that a kindergarten student had approached the table and that appellant had "pushed in front of her" and asked, "Didn't you see me standing here?" Ms. Carlson testified that she smelled liquor on his breath and that she contacted the school office. Ms. Kilgo testified that she also saw his interaction with the kindergarten student and said it appeared that appellant had been drinking.

Ms. Carlson also testified that appellant had called the school one afternoon and left a message, which she returned, wanting to know if he could ride in the hot air balloon. She said that she would "look into it" but that for the time being it was for the students as an incentive for selling the first ten coupon books. He told Ms. Carlson that he had also sold the books. Ms. Carlson testified that she contacted School Partners and was informed that, due to liability, it was strictly for the students. She informed appellant of School Partners' response.

On the day of the event, December 3, 2010, appellant went to the soccer fields with a video camera "to document what was being said" because he felt that his son had been mistreated or defrauded. He testified that he had wanted "to get answers." With video camera in hand and operating, he approached Ms. Carlson—who was helping children on and off the balloon—and asked her whether he could ride, why he could not ride, and who was in charge. She attempted to direct him away from the balloon. He followed her closely with the camera in her face, repeatedly questioning her. She testified that he was in her personal space, that she felt threatened, and that she was worried about the safety of the

3

students. She called 911. As Ms. Carlson spoke with law enforcement on the phone, appellant remained close behind her, continuing to record her on his camera.

Ms. Kilgo testified that she saw appellant following Ms. Carlson with his camera and asking her repeatedly if he could ride in the balloon. She said that he followed Ms. Carlson for a while and then came to Ms. Kilgo, putting the video camera in her face, and asked her how she felt about being a liar to the children. She testified that he was very close to her at that point and that she was uncomfortable and scared. She said that she called the office for support and that when she walked back into the school, she was shaking.

John Loncarevic, an officer with the Bentonville Police Department, testified that he was dispatched to the soccer field regarding the complaint made by Ms. Carlson. He said that he spoke with appellant at the scene and that appellant said that his son had been cheated out of some prizes. Appellant told Officer Loncarevic that he had been told by School Partners that he would be awarded the opportunity to ride in the hot air balloon with his son, and he was upset that the individuals running the event had not allowed him to ride. He told Officer Loncarevic that he brought the video camera to record why they cheated him and his son. Appellant was very upset and frustrated according to Officer Loncarevic. The DVD that appellant recorded at the event was played for the jury at trial.

The jury convicted appellant of harassment, a class A misdemeanor, and recommended a sentence of thirty days in the county jail, which the court imposed.

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Tillman v. State*, 364 Ark. 143, 146, 217 S.W.3d 773, 774 (2005). In reviewing a

SLIP OPINION

challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id*. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id*. The credibility of witnesses is an issue for the jury and not the appellate court. *Burley v. State*, 348 Ark. 422, 73 S.W.3d 600 (2002). The jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id*. Moreover, a jury is not required to believe the defendant's version of events because he is the person most interested in the outcome of the trial. *Newton v. State*, 2011 Ark. App. 190, at 5, 382 S.W.3d 711, 714.

On appeal, appellant argues that the evidence was not sufficient to show beyond a reasonable doubt that his activities "served no good purpose." He claims that he had a good purpose—that is, "to set things right between the PTO, the Fundraiser, School Partners, and his son, who had given his all, was in fact the highest seller, and had been cheated out of his just award, without notice of any kind."

Appellant was convicted pursuant to Arkansas Code Annotated section 5-71-208 (Repl. 2005), which provides in relevant part as follows:

> (a) A person commits the offense of harassment if, with purpose to harass, annoy, or alarm another person, without good cause, he or she:
> . . .
>
> (3) Follows a person in or about a public place;
> . . .

(5) Engages in conduct or repeatedly commits an act that alarms or seriously annoys another person and that serves no legitimate purpose; or

(6) Places a person under surveillance by remaining present outside that person's school, place of employment, vehicle, other place occupied by that person, or residence, other than the residence of the defendant, for no purpose other than to harass, alarm, or annoy.

First, the language in the governing statute does not require the State to prove that appellant's activities "served no good purpose." It requires the State to prove that, with purpose to harass, annoy, or alarm another person, "without good cause," appellant followed that person in or about a public place or engaged in conduct or repeatedly committed an act that alarmed or seriously annoyed another person and "that serve[d] no legitimate purpose."

Second, in reviewing a challenge to the sufficiency of the evidence, we consider only the evidence that supports the verdict, *Stone*, *supra*, and we affirm a conviction if substantial evidence exists to support it. Ms. Carlson testified that appellant, with a video camera directed at her, repeatedly questioned her about riding in the hot air balloon while she was attempting to organize and help the children get in and out of it. She said he followed her and continued to comment to her as she called 911. She also testified that she felt threatened and was concerned for the children. Ms. Kilgo testified that appellant then put the video camera in her face and asked her how she felt about being a liar to the children. Both women testified that appellant made them uncomfortable and was much too close to them. Credibility of witnesses is an issue for the jury, and the jury is not required to believe the defendant's version. *Newton*, *supra*. Whether appellant had "good cause" or a "legitimate purpose" for his actions is not a question for this court; it was a question for the jury, which


clearly thought that he did not. We hold that substantial evidence supports the jury's verdict.

Affirmed.

GLADWIN, C.J., and VIRDEN, J., agree.

*Herbert C. Southern*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Ass't Att'y Gen., for appellee.