Cite as 2020 Ark. App. 101

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR–19–492

| | |
|---|---|
| MARK GARNER | **Opinion Delivered** February 12, 2020 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NOS. 66FCR-10-893; 66FCR-10-896; 66FCR-12-478; 66FCR-18-1313] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE STEPHEN TABOR, JUDGE |
| | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

## BRANDON J. HARRISON, Judge

Mark Garner appeals a 15 April 2019 sentencing order reflecting eight convictions in four separate criminal cases. All cases were tried together. Three of the criminal cases were revocations of Garner's suspended sentence or probation for commercial burglary. Although a sentencing order reflecting eight convictions was appealed, Garner only addresses the five drug-related convictions. So this appeal is about whether the State sufficiently supported case number 66CR-18-1313, which led to five drug convictions against Garner for (1) possession of drug paraphernalia, (2) manufacture of marijuana, (3) maintaining a drug premises, (4) possession of drug paraphernalia, and (5) possession of methamphetamine.

Here is a brief summary of the events that led to the drug convictions. Garner lived in a three-bedroom home with two other people, one female and one male. Within the home, two of the bedrooms were located downstairs, and one was located upstairs. Of the downstairs bedrooms, only one was used as a bedroom; the other was used for storage. Garner did not occupy the upstairs bedroom. The upstairs bedroom was occupied by Andy Sebren. For reasons discussed in more detail later, the police ended up searching the home pursuant to a warrant. While doing so, they found controlled substances and paraphernalia throughout the home and its curtilage. Specifically, marijuana and related paraphernalia were found in the living room. A marijuana plant was found in a shed on the property. Methamphetamine was found in the upstairs bedroom. A methamphetamine pipe was found inside a tin located within a cabinet in the kitchen. Methamphetamine was found inside a nightstand located in the downstairs bedroom that was not used for storage.

Garner was charged with and convicted of possessing the marijuana and paraphernalia located in the living room, the marijuana plant located in the shed, the methamphetamine pipe found in the kitchen, the methamphetamine found in the downstairs bedroom, and with maintaining a drug premises.

We reverse and dismiss the charges that Garner possessed the methamphetamine pipe found in the kitchen and that he possessed the methamphetamine in the downstairs bedroom. We affirm all the other convictions.

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, and only the evidence supporting the verdict will be considered. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). A conviction is affirmed

if substantial evidence exists to support it. *Id*. Substantial evidence is evidence forceful enough to compel a conclusion beyond suspicion or conjecture. *Id*.

To preserve a challenge to the sufficiency of the evidence, an appellant must make a specific motion for a directed verdict that advises the circuit court of the exact element of the crime that the State has failed to prove. *Pratt v. State*, 359 Ark. 16, 23, 194 S.W.3d 183, 187 (2004). Here is Garner's motion for a directed verdict against the drug charges in case number 1313.

> Your Honor, at this time, I am going to move for a directed verdict. I believe the State has failed to prove that my client possessed—Count I, the possession of drug paraphernalia for ingesting methamphetamine and cocaine. I believe that they failed to prove the manufacture of marijuana and the maintaining premises for drug activity and the possession of drug paraphernalia for repackaging and the possession of meth. You heard—there's obviously been some false comments made in here I suspect by the bail bondsman, who had a reason to be angry because of the person he was looking for, with the allegations that there were a bunch of knee-high plants, that they obviously removed things. The pictures show that room was cluttered. There was nothing removed from that. You got one small plant that's about four inches tall. And Officer Lum admitted that—or his testimony was that Sebren was the one with all the methamphetamine and stuff like that upstairs—and he's already pled guilty to that—and then he said that Mr. Garner admitted to the stuff on the end table and they had brought my client from outside and brought him in, sat him down at that table. There's nothing that indicated that he looked and saw exactly what was there. And Officer Lum specifically did not say is this baggy [sic] of methamphetamine or this white crystalline substance yours. In fact, he said it's not even in the report that there was that baggy [sic] there. And I think Officer Lum was very truthful here today. He said I cannot say that the bedroom was Mr. Garner's. We are speculating as to that. We cannot have speculation. He found stuff that belonged to the woman and she's not charged. So you can't go with the items that were found in the bedroom, which would have been the baggies of seeds and that stuff.
>
> The meth pipe that they found in the kitchen, again, that's in an area open to other individuals. There's nothing that shows that he had knowledge of it or was in a position to exercise dominion and control over that and so they're speculating to ask that go to the jury. I just don't believe the State made their burden on those. The manufacture I can see that's a close call because of the one plant and perhaps the—but, you know, if that's a misdemeanor amount, that's all I am going

3

to say on that right now. But I believe the State has failed to meet the burden on these charges.

. . . .

I also, if I didn't specifically state it, object to the maintaining premises, because we don't have any evidence that there were any drug sales going on out of there.

. . . .

[B]ut Officer Lum said they were not on their radar for anything. I don't believe the evidence is sufficient to show that there was that kind of—any kind of activity sufficient to justify conviction for that charge.

We will now address the five drug-related convictions in more detail.

## I. *Marijuana Convictions*

The jury convicted Garner of manufacturing marijuana, a Class A misdemeanor; and possession of drug paraphernalia to process, prepare, test, or analyze marijuana, a Class D felony. Ark. Code Ann. § 5-64-439(b)(1) (Repl. 2016); Ark. Code Ann. § 5-4-443(d) (Repl. 2016). The prosecutor played the jury a short video showing the marijuana plant in the shed, a photograph of the dried marijuana plant recovered from the shed, and a foil emergency blanket used to keep the growing plant warm. Jurors also saw a photograph of Garner's marijuana, a marijuana pipe, a grinder, and rolling papers sitting on an end table in the living room. There was testimony during the trial that Garner told a police detective that the marijuana and related marijuana paraphernalia, which were in plain view in the living room, were his. Garner admitted to the detective that he knew about the small marijuana plant growing in the shed on the property.

In his appellate brief, Garner "concedes that these items were likely substantial evidence for purposes of a motion for directed verdict." Additionally, Garner did not make

4

any specific, fact-based challenges to these marijuana charges in his directed-verdict motion during the trial. We therefore affirm the marijuana convictions.

## II. *Drug-Premises Conviction*

The jury convicted Garner of maintaining a premise for drug activity and found that he committed the offense within 1,000 feet of a church or school. Ark. Code Ann. § 5-64-402(a)(2), (b)(2). Arkansas Code Annotated section 5-64-402 forbids any person from knowingly keeping or maintaining any dwelling that is resorted to by a person for the purpose of using or obtaining a controlled substance. Marijuana is a controlled substance under Arkansas law. Ark. Code Ann. § 5-64-215 (Supp. 2019). In his directed-verdict motion, Garner made a skeletal argument that there was insufficient evidence for the drug-premises charge because the State did not show that there were "drug sales going on out of there." He is limited to this argument on appeal. *Campbell v. State*, 319 Ark. 332, 333, 891 S.W.2d 55, 56 (1995). The State does not have to prove that drug sales occurred as an element of the crime. *Loggins v. State*, 2010 Ark. 414, at 7, 372 S.W.3d 785, 791. That the dwelling was used for consuming or using drugs is enough. *Id.* And Garner did not challenge the 1,000-foot "drug-free zone" enhancement.

The drug-premises conviction, and the related sentence enhancement, are affirmed.

## III. *Possession of Methamphetamine*

The jury convicted Garner of possession of less than two grams of methamphetamine. Ark. Code Ann. § 5-64-419(b)(1)(A). He argues that there was insufficient evidence of constructive possession in a jointly occupied premises. While Garner did not state the words "constructive possession" or "jointly occupied premises," he did argue specific facts in his

5

directed-verdict motion. The motion for a directed verdict was not ideal, but it preserved the point well enough, so we will reach the merits of his argument.

A.  The Facts Related to Methamphetamine Possession

On 25 October 2018, police officers obtained a warrant and searched a house located at 1811 North C Street in Fort Smith, Arkansas. Garner was outside, one-half block away from the house and walking a small child in a stroller when police officers began searching the home. When the officers entered the home, they found a man named Andy Sebren in an upstairs bedroom. No other person was present during the search. Police sergeant Jeffrey Lum testified that he believed the downstairs bedroom was Garner's bedroom, because he saw an identification document in the room "that belonged to his significant other," Elizabeth Darnell. A baggie containing .0183 grams of methamphetamine, which was identified as State's exhibit No. 12, was recovered from a nightstand drawer in the same downstairs bedroom. A larger quantity of methamphetamine, not relevant to the possession charge against Garner, was found upstairs with Andy Sebren.

Bail bondsman Jered Branham testified that on 25 October 2018, he went to 1811 North C Street to look for Elizabeth Darnell because that was the address she had given him. No one answered the door; but Branham saw Mark Garner "poke his head around the corner of the back bedroom" when Branham looked through windowpanes on the front door. Branham eventually spoke with Garner to try and persuade him to "give her up." He went to the back of the house, entered a shed, and saw three marijuana plants. Branham went back to the front of the home and explained to Garner "that [he] was going to go in and search the house and it was going to be easier on him and her both if she would just come out."

6

Branham searched the house, found Elizabeth Darnell in a downstairs bedroom, and arrested her. Branham's call to law enforcement about the marijuana plants he had seen in the shed was the basis for the search warrant.

Ashley Smith, the "[d]irector of inmate management assistant" at the Sebastian County Adult Detention Center, testified that she keeps booking records for inmates as part of her job duties. When they get to the jail, inmates are required to fill out a "half sheet" with their name, address, personal information, emergency contact, and place of birth. State's exhibit No. 22 is a document that Garner completed on 25 October 2018. It identifies 1811 North C Street as Garner's home address and designates his mother as his emergency contact.

## B. The Methamphetamine Found in the Nightstand

Arkansas Code Annotated section 5-64-419(b) makes it illegal for a person to possess methamphetamine. To convict Garner of possessing methamphetamine, the State must show that he knew the methamphetamine was present and that he exercised control over it. *Lambert v. State*, 2017 Ark. 31, at 3, 509 S.W.3d 637, 640 ("[C]onstructive possession of contraband means knowledge of its presence and control over it.") (internal citations omitted); *see also Gill v. State*, 2017 Ark. App. 22, at 3–4, 511 S.W.3d 865, 868 ("The State does not have to prove that the defendant physically held the contraband. . . . Constructive possession, which is the control or right to control the contraband, is sufficient."). A defendant's exclusive control of the premises is enough to raise an inference of control and knowledge of the substance, but joint control of the premises requires some further "additional factor linking the accused" or an admission connecting the accused with the illegal drugs. *Harjo v. State*, 2017 Ark. App. 337, at 4, 522 S.W.3d 839, 843.

7

Additional factors linking the accused to the illegal drugs may include (1) the proximity of the contraband to the accused, (2) whether it is in plain view, and (3) who owns the property where the contraband is found. *Nichols v. State*, 306 Ark. 417, 420, 815 S.W.2d 382, 384 (1991). A fourth link can be an obvious strong smell or chemical odor of illegal drugs. *Walley v. State*, 353 Ark. 586, 597, 112 S.W.3d 349, 354 (2003). A fifth evidentiary link can be an accused's suspicious behavior, coupled with physical proximity to the contraband. *Pokatilov v. State*, 2017 Ark. 264, at 4, 526 S.W.3d 849, 854. In sum, a totality of the circumstances is considered when determining whether sufficient additional incriminating factors support a finding of constructive possession. *Harjo*, 2017 Ark. App. 337, at 4, 522 S.W.3d at 843 (sufficient evidence linking the accused to illegal drugs in a jointly occupied bedroom included bills in defendant's name, men's clothing, and that the defendant was there when police searched the home and said that, "whatever they found in their search of the home belonged to him").

Two equally reasonable conclusions as to what occurred is not enough to support a conviction. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000). When only circumstantial evidence is presented, as was here, there must be sufficient additional incriminating factors to link the accused with the controlled substance, and it must exclude every other reasonable hypothesis consistent with innocence. *Ravellette v. State*, 264 Ark. 344, 346, 571 S.W.2d 433, 434 (1978).

Here, the State argues that "appellant's significant other's ID" sufficiently links Garner to the methamphetamine that was recovered in the downstairs bedroom nightstand drawer. In contrast, Garner claims that the State's evidence was deficient and that no

8

reasonable juror could have concluded that he constructively possessed the methamphetamine. Garner has the better argument on this point.

Recall that Officer Lum testified that he found Elizabeth Darnell's identification in the bedroom, so he believed the bedroom was Garner's. The State argues that a "reasonable jury would not have to speculate to conclude that appellant stayed in the bedroom where his significant other's ID was located." But even if that inference is given its full weight—that Garner must be sleeping in the bedroom because his girlfriend's identification was in the room—Darnell's identification does not show that Garner had knowledge plus control, or the right to control, the contents of a nightstand drawer. The State asks us to infer that because Darnell's identification was found in the unoccupied bedroom Garner was the person who had the methamphetamine in the baggie in the nightstand. But even viewing the evidence in the light most favorable to the State, we can infer only that the bedroom was jointly occupied. Similarly, bail bondsman Jered Branham's testimony that he saw both Darnell and Garner in the same bedroom on the same day shows only that the bedroom may have been jointly occupied. More, however, is required; the more being that Garner had knowledge of the methamphetamine and the right to control it.

The 1811 North C Street house was undisputedly jointly occupied. Multiple people, including Garner, lived there. That Garner may have jointly occupied a bedroom and identified North C Street as his home address is not enough. In *Bradley v. State*, a felon-in-possession-of-a-firearm case, the defendant put his home address on a *Miranda* form after his arrest. 2018 Ark. App. 586, at 4, 564 S.W.3d 569, 572. The address that Bradley placed on the *Miranda* after his arrest was the same one where the gun was recovered when police searched the house and a shed. But placing the address on the *Miranda* form was not enough

9

to independently link Bradley to the contraband recovered from the jointly occupied premises. Like Bradley, that Garner named 1811 North C Street as his home address on a law-enforcement document is not enough to link him to the methamphetamine in the nightstand drawer. *Id*; *see also McCarley v. State*, 2019 Ark. App. 222, at 6, 575 S.W.3d 603, 607 (existence of lease agreement and the defendant's driver's license listing the home's address were insufficient independent links for constructive possession in a jointly occupied dwelling).

The methamphetamine baggie could have been Garner's, or Elizabeth Darnell's. Or someone else's, like Andy Sebren's. The point is that the jury had to speculate that it was Garner's methamphetamine rather than someone else's. While Garner admitted to the detective that he possessed the marijuana and related paraphernalia that was in plain sight in the living room, he did not admit to possessing the marijuana seeds or the other materials recovered in the bedroom. And unlike Sebren, Garner never admitted knowing about or controlling methamphetamine. A marijuana user is not necessarily a methamphetamine user. Moreover, the small quantity of methamphetamine was not found in plain view. *Compare Darrough v. State*, 322 Ark. 251, 252, 908 S.W.2d 325, 326 (1995) (appellant and woman were found sleeping in same bed with drugs sitting on dresser). Nor was it found in a room that a witness identified as being "Garner's bedroom," meaning a room belonging solely to him. The baggie was not found on Garner's person, with his personal effects, or in a common area. *Compare McDaniel v. State*, 2011 Ark. App. 677 (appellant sitting in living room; drugs found in adjacent kitchen; mail addressed to appellant at that residence's address). Finally, Garner was not home when the police searched the property, and the baggie was not tested for fingerprints.

The State rests its case solely on Darnell's identification document as being the independent link between Garner and the methamphetamine. In our view, a jury could not have concluded, without speculating, that Garner constructively possessed the methamphetamine baggie. Merely residing in a jointly occupied premises where multiple drugs are found cannot sustain a conviction for possession of methamphetamine. More to the point, the State did not present substantial evidence that Garner constructively possessed methamphetamine based on the presence of a girlfriend's ID in a room of the jointly occupied house.

The methamphetamine-possession conviction is therefore reversed.

IV. *Possession of Drug Paraphernalia (Methamphetamine Pipe)*

We now come to the possession-of-drug-paraphernalia conviction. Garner was convicted under Ark. Code Ann. § 5-64-443(a)(2) of possessing a methamphetamine pipe that police officers recovered from a Juicy Fruit tin inside a kitchen cabinet. State's exhibits 9A, 9B, and 10 are photographs of the contents of the kitchen cabinet, the Juicy Fruit tin, and a pink-tinted pipe found in it. Officer Jeffrey Lum testified,

> There was a cabinet in the kitchen. And in that cabinet, there was a small, metal tin container with a pipe that's commonly used in methamphetamine use with residue on it.

The small Juicy Fruit tin had "a meth pipe in it." Police officers collected the pink pipe from inside the Juicy Fruit tin as evidence, but the Arkansas State Crime Laboratory did not test the pink pipe or its residue. There was no other testimony about the kitchen or the pink methamphetamine pipe.

As he did in the circuit court, Garner argues here that the methamphetamine pipe recovered from the kitchen was from an area open to other individuals, and the State failed

11

to show that he had knowledge of the pipe or exercised dominion or control over it. We agree. The State did not present the jury with additional evidence linking Garner to the pipe.

There are a few "kitchen" cases. Most deal with some items left in plain view, which is a factor that can help make a constructive-possession case, especially when the contraband is found in a common area. *E.g.*, *Sweat v. State*, 25 Ark. App. 60, 752 S.W.2d 49 (1988) (affirming constructive possession when appellant was living at residence, was present when search was conducted, and drug paraphernalia was in plain view on the kitchen table); *Lueken v. State*, 88 Ark. App. 323, 198 S.W.3d 547 (2004) (sufficient evidence for constructive possession existed when appellant arrested outside while working on a vehicle with drug paraphernalia on his person, he shared a residence with roommate, a strong odor drifted from the house, drug paraphernalia was on coffee table in living area, and other drug material was found in kitchen and laundry-room area and inside a bedroom and bathroom). But this case is not sufficiently supported. The contraband was found inside a closed small tin that was itself inside a kitchen cabinet of a jointly occupied house. Sebren was the only person who was home when the search warrant was executed. He was found with methamphetamine and paraphernalia on his person and admitted using it. The pipe that was found in the kitchen was not tested for methamphetamine residue. Garner was not found close to it, nor did he have any methamphetamine on his person. Once again, the jury would have had to speculate that the pipe found in the kitchen belonged to Garner rather than someone else.

We therefore reverse Garner's conviction under Ark. Code Ann. § 5-64-443(a)(2) (possessing a methamphetamine pipe).

12

## V. Conclusion

The chart below summarizes the final dispositions on all the offenses in the 15 April 2019 sentencing order.

| Offense Number | Crime | Ark. Code Ann. § | Circuit Court Case Number | Disposition |
|---|---|---|---|---|
| 1 | Commercial Burglary | 5–39–201 | 66FCR–10–893 | Affirmed |
| 2 | Commercial Burglary | 5–39–201 | 66FCR–10–896 | Affirmed |
| 3 | Commercial Burglary | 5–39–201 | 66FCR–12–478 | Affirmed |
| 4 | Possession of Drug Paraphernalia | 6-64–443(a)(2) | 66FCR–18–1313 | Reversed & Dismissed |
| 5 | Manufacture of Marijuana | 5-64-439 | 66FCR–18–1313 | Affirmed |
| 6 | Maintaining Drug Premises | 5-64-402 (a)(2) & (b)(2) | 66FCR–18–1313 | Affirmed |
| 7 | Possession of Drug Paraphernalia | 5-64-443(d) | 66FCR–18–1313 | Affirmed |
| 8 | Possession of Methamphetamine | 5-64-419(b) | 66FCR–18–1313 | Reversed & Dismissed |

Affirmed in part; reversed and dismissed in part.

GLADWIN and WHITEAKER, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.